ENGLISH *v.* FRIEDMAN.

1. ATTACHMENT.  *Fraudulent assignment.  Evidence.*

   On the trial of an attachment, based upon an alleged fraudulent assignment by the defendant, evidence is admissible that prior to the assignment, as a basis for credit, he furnished creditors statements of his indebtedness that omitted a large debt which it was afterwards claimed he then owed his father, and which was preferred in the assignment.  So held, although a fraudulent contracting of the debt sued for was not alleged, and although the statements were made months before the assignment.  The evidence is admissible on the question of the genuineness of the debt so preferred.

2. ASSIGNMENT FOR CREDITORS.  *Reservation.  Subsequent fraud.*

   If the assignor, in good faith, had embraced in a general assignment made by him all his known estate, it cannot be avoided because it afterwards appears that he owned land not embraced in it, of which he knew nothing at the time he assigned.  Nor can the subsequent bad faith of the assignor in reference to such land avoid the assignment.

3. SAME.  *Subsequent fraud of assignor.  Case.*

   Accordingly, it is error to instruct that a general assignment for creditors is rendered fraudulent by the subsequent conduct of the assignor in attempting to secure for his sister, as against the assignee, land not mentioned in the assignment, which, at the time he assigned, he did not know he owned.

FROM the circuit court of Coahoma county.

HON. R. W. WILLIAMSON, Judge.

In January, 1891, appellants, English & Holmes, merchants, made a voluntary assignment, purporting to convey all their assets for the benefit of their creditors.  Certain debts were preferred, among others a debt of about $5,000 to S. G. English, father of one of the assignors.  The assignment recites that it is the intention of the assignors to convey all their assets of every kind and description, and if any property is omitted by inadvertence, mistake or otherwise, the assignee

shall place the same on the schedule of assets, and treat it as conveyed by the assignment.

Upon the execution of the assignment certain of the unpreferred creditors sued out attachments, and caused them to be levied on the goods so assigned. Among those who attached were appellees, Friedman Bros., their affidavit for attachment alleging, among other grounds, that the defendants had assigned or disposed of their property or rights in action, or some part thereof, with intent to defraud their creditors. The affidavit did not allege that the debt sued on had been fraudulently contracted. Defendants traversed the grounds of the attachment, and, on the trial of the issue thus raised, sought to sustain the attachment by showing that the assignment was fraudulent. It is not necessary, in view of the opinion, to set out all the evidence relied on to sustain this contention. So much of it as is necessary to an understanding of the questions passed on by the court is stated in the opinion. The fourth instruction, copied in the opinion, sufficiently indicates the nature of the evidence on which it is based.

There was a verdict for plaintiffs. Judgment was entered accordingly. Motion for new trial was overruled, and defendants appeal. The opinion contains a further statement of the facts.

*J. W. & W. D. Cutrer,* for appellants.

1. The evidence as to the statements made by English & Holmes to certain creditors relative to the status of their business a month before the assignment, was clearly incompetent. The statements were not made to appellees, but were private statements made to others, and they were never even communicated to appellees. So far as any statement was made to them, it was solely for the purpose of assuring them as to a purchase made long before the transaction on which this suit is based took place. The affidavit in the attachment does not allege that the debt was fraudulently contracted.

We submit there must be a limit beyond which statements which a man may make for a specific purpose may not be used against him. This evidence can throw no light on the attachment issue.

2. The judgment for plaintiff resulted mainly from the fourth instruction, relative to the ownership of land by Holmes in Tennessee. The instruction is erroneous. It makes the assignment fraudulent, regardless of the fact that Holmes was in ignorance of his ownership of the land at the time of its execution. It makes the *bona fides* of the assignment depend upon the subsequent conduct of the assignor. A fraud that will effect an assignment must be such as entered into its execution. Subsequent fraud on the part of the assignor cannot be shown.

*D. A. Scott,* for appellees.

That the reservation by the debtor of a part of his property from the general assignment amounts to a fraud is a familiar rule, and is clearly applicable to this case. It is clear that the land in Tennessee was not included either in the assignment or the schedules, and was not intended by the assignor to be. The following authorities sustain our contention that the assignment is fraudulent as to the plaintiffs. *Arthur* v. *Bank,* 9 Smed. & M., 394; 5 Cowen, 547; 20 Johns., 447; 6 Hill, 438; 6 Ky., 277; 5 Ohio, 293; 4 Ala., 374; 6 Mo., 302; 6 Ala., 179; 2 R. I., 35; Burrill on Assignments, §§ 98, 136. The original words in the assignment cannot operate to pass land which is omitted from the schedule. Burrill, 136; 31 Md., 87; 5 Eng. L. & Eq., 471; 6 Minn., 375; 8 Lea, 67; 37 Mich., 487; 5 Littell (Ky.), 349. An assignment, general on it face, must be so in fact; otherwise, it will not be sustained. 37 Mich., 487; 90 N. Y., 382; 2 R. I., 35; 26 Vt., 462.

WOODS, J., delivered the opinion of the court.

1. The errors assigned upon the action of the court, in

admitting evidence showing the statements made by appellants to their creditors or to others, for the purpose of establishing a basis of credit, are not well taken. Though these statements were made months before the deed of assignment was executed and the attachments taken out, and though the affidavits in attachment do not charge, as grounds for their issuance, that the debts sued for were fraudulently contracted, yet, in an aspect wholly different from that just adverted to, the evidence was legitimate and pertinent. The statements, whose admission was objected to on trial, were, in effect, that the large debt of $5,000 or more, and perhaps other debts, of the father of English, who was preferred in the assignment, was not in existence. This large debt was not mentioned in any of the statements, and its existence, by necessary inference, if not by positive averment, was denied. When the deed of assignment was produced, in which the father of the partner, English, was preferred for $5,000, these statements were admissible as tending to cast doubt upon the genuineness of the debt so preferred. The statement that virtually denied the existence of the $5,000 debt to English's father was in conflict with the deed of assignment, which alleged and provided for the preferred payment of that sum, and the jury was entitled to all evidence which would shed light upon the genuineness of the alleged debt.

2. This instruction was given by the court on behalf of plaintiffs below: "The court instructs the jury that if they believe from the evidence that the defendant, Holmes, was the owner of any land in the state of Tennessee at the date of the assignment, and, after that time, confessed judgment in favor of his sister, and accompanied her attorney to Tennessee for the purpose of impressing a lien on said property, or subjecting the same to the payment of said judgment, and did not notify the assignee, J. H. Peace, of his ownership thereof until at or about the time the same was seized by other creditors of said defendants, then the jury

will find for the plaintiff, notwithstanding said Holmes may not have known, at the date of the assignment, that he was the owner of said property."

Under the rule of law announced in this instruction, no assignment could ever be made by one not possessed of omniscience, at least as to his own affairs and fortunes, past, present and future; and no man, having made an assignment in good faith, would ever dare thereafter to attempt any disposition of any property or estate cast upon him by descent or devise, in another state and unknown to him at the date of the assignment, if the rule is as announced.

In both aspects, the instruction goes beyond the most stringent rules ever prescribed for assignments. If a man in good faith conveys all his known estate, the deed shall not be avoided because it may afterwards be made to appear that the assignor, by descent or devise, at the date of the assignment, was entitled to some estate in a distant state of which the grantor certainly knew nothing when making his assignment, and which unknown estate was not embraced in the deed of assignment. Bad faith is not to be imputed to one for not doing that which it was impossible, morally, to have been done. To vacate an assignment because not embracing a specific article of property, confessedly unknown to the assignor, would be harsh and unjust indeed.

It is equally true that the subsequent bad faith of the grantor will not avoid a deed of assignment. The inquiry must always be as to the good faith at or before the making of the assignment—what was the conduct, what the intent in the making of the assignment, and not what obliquity marks the after conduct of the assignor.

Every way the instruction is fatally erroneous, and was, we cannot doubt, largely instrumental in procuring the verdict.

*Reversed and remanded.*